UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 05-00167 WHA |
| v. | |
| EDGAR DIAZ, RICKEY ROLLINS, DON JOHNSON, ROBERT CALLOWAY, DORNELL ELLIS, EMILE FORT, CHRISTOPHER BYES, PARIS RAGLAND, RONNIE CALLOWAY, ALLEN CALLOWAY, and REDACTED DEFENDANTS NOS. ONE & TWO, | **ORDER DENYING DEFENDANT BYES' MOTION TO SUPPRESS EVIDENCE (Doc. No. 608)** |
| Defendants. | |

**INTRODUCTION**

In this multi-count RICO gang prosecution with multiple defendants, defendant Christopher Byes moves to suppress evidence obtained during defendant Byes' arrest on January 12, 2000. An evidentiary hearing was held on October 4, 2006, during which defendant Byes and one of the arresting officers testified. For the reasons below, defendant Byes' motion is **DENIED**.

**STATEMENT**

On January 12, 2000, defendant Byes was walking on Blythdale Street in San Francisco, California. This part of San Francisco was known to be controlled by the "Up the Hill Gang" ("UTHG"), and defendant Byes was then an active member of the rival Down Below Gang

1  ("DBG"). At the hearing, defendant Byes admitted that he has a tattoo reading "DBG" on his
2  forearm, although he denied that it stood for Down Below Gang. Defendant Byes described the
3  jacket he was wearing that morning as a large black pull-over jacket that ended about six inches
4  below his waist. The zipper on the jacket ran only from the mid-point of defendant Byes' torso
5  to his neck, he said. In contrast to this in-court testimony, defendant Byes stated in his signed
6  declaration that he was wearing "a thick black jacket," that the jacket ended about a foot below
7  his waist, and simply stated that his jacket was "zipped up" although the description contained
8  nothing about the zipper only running half-way up the jacket.

9        On the day in question, Officer Gala and Officer Razzak drove by defendant Byes. In an
10 unmarked police car, Officer Razzak saw defendant Byes in his black jacket. When defendant
11 Byes turned, Officer Razzak could see a gun strap around defendant Byes' neck and a clip
12 showing through the bottom part of the baggy jacket. From this, Officer Razzak could tell that
13 defendant had a firearm hanging from his neck. Defendant Byes then began to run. The
14 officers chased him on foot and radioed other officers in the area for backup. Just before being
15 apprehended, defendant Byes placed his Uzi machine gun on the ground and continued to run.
16 The officers saw this. Moments later, a police car cut off defendant Byes' path. The officers
17 detained and arrested defendant Byes. Officer Razzak picked up the Uzi machine gun that
18 defendant Byes had left on the street. The officers then transported defendant Byes to Ingleside
19 station. There, after being read his *Miranda* rights, defendant Byes admitted that the Uzi
20 machine gun was his (Razzak Decl. ¶ 3, 5, 6, 8–11; Byes Decl. ¶ 1–4, 9).

**ANALYSIS**

**1. DEFENDANT BYES IS NOT ENTITLED TO SUPPRESSION OF THE UZI MACHINE GUN.**

Defendant Byes is not entitled to suppression of the gun seized on January 12, 2000.
It was abandoned by defendant Byes when he was fleeing from the police. As explained below,
defendant Byes had not been physically seized by the police nor did he submit to a show of
authority. Accordingly, the Uzi was not the product of an unlawful search.

*California v. Hodari D.*, 499 U.S. 621 (1991), is controlling. There, defendant Hodari
D., apparently panicked by the sight of two plain-clothes police officers in jackets emblazoned

2

with "Police" on the front and back in their unmarked car, ran from the officers. Upon seeing an officer pursuing him, Hodari tossed a small rock to the ground. The officer tackled Hodari and arrested him. The small rock Hodari had tossed was a rock of cocaine.

In *Hodari*, the Supreme Court considered "whether, at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." It had been conceded by the State of California that the police officers did not have the "reasonable suspicion" required by *Terry v. Ohio*, 392 U.S. 1 (1968), to stop Hodari. Hodari's argument was that "a seizure occurs 'when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen.'" The Supreme Court held that a seizure does not occur when the subject does not yield to a show of authority. Rather, a seizure occurs when the subject is either physically restrained by the officer or submits to the show of authority. The cocaine Hodari abandoned while he was running was not the fruit of a seizure, and the motion to exclude the evidence was properly denied. *Hodari D.*, 499 U.S. at 623, 625, 626, 629.

At our hearing, counsel suggested that the mere fact that five police officers and two police cars pursued Byes converted the pursuit into an illegal arrest, and thus, that the seizure of the gun was unlawful. Presumably this was an attempt to fit his argument within the "show of authority" seizure exception created in *Terry v. Ohio* and discussed in *Hodari*. The Supreme Court's holding in *Hodari*, however, completely cuts against the suggestion. *Hodari* held that there cannot be a seizure unless defendant Byes submitted to a show of authority. Even if the five police officers and two police cars constituted a show of authority, defendant Byes here did not submit to that authority because he ran and continued to run. Even when an officer yelled, "freeze," he continued to run and did not submit to the officer's command. The Uzi was abandoned while defendant Byes was on the run. Under *Hodari*, there cannot be a Fourth Amendment seizure of a person when there is no physical force restraining the person's movement nor submission to a show of authority by the police officers. *Hodari D.*, 499 U.S. at 626. Accordingly, the gun defendant Byes tossed while running from the police officers was abandoned by him and lawfully recovered by the police.

3

### 2. THE OFFICERS HAD PROBABLE CAUSE TO ARREST DEFENDANT BYES AFTER HE DROPPED THE UZI MACHINE GUN.

Dropping the gun created probable cause to justify the officers' arrest of defendant Byes. An arrest is constitutionally valid if the arresting officers had probable cause to make the arrest. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Officers have probable cause to make an arrest when "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Here, the officers retrieved the Uzi machine gun they had just seen defendant Byes drop. This order finds that the discovery of the gun coupled with the previous observations of the officers constituted sufficient probable cause to justify a warrantless arrest of defendant Byes.

Finally, defendant Byes was known to the officers present to be a member of DBG and on probation (Razzak Decl. ¶ 3–4). Defendant Byes was seen walking in enemy gang territory belonging to the UTHG. This alone created reasonable suspicion for a parole stop, even without taking into account Officer Razzak's sighting of the Uzi gun on defendant Byes.

The Court accepts the testimony of Officer Razzak as credible. Defendant Byes' testimony was not credible for several reasons. At the hearing, defendant testified that his tattoo — which reads "DBG" — was not a symbol of the Down Below Gang, rather that "DBG" could mean "a variety of things." Defendant Byes, however, could not come up with any other meaning. In light of the context of this case, that "DBG" could mean anything other than "Down Below Gang" is too far-fetched to be believed. Furthermore, defendant Byes also stated categorically (and several times) that he had *never* seen Officer Razzak before in his life, even after his attorney tried to redirect his testimony by asking if it was possible that he did not remember seeing Officer Razzak before. Defendant Byes' response affirming that he had never seen Officer Razzak before is implausible because Officer Razzak was involved in the detainment and arrest of defendant Byes that day. It is unbelievable that this officer who was on the scene, and has filed a declaration under penalty of perjury with this Court could not have been part of defendant Byes' arrest. Amazingly, this fact is corroborated by defendant Byes'

own earlier-filed declaration which stated, "the police officers eventually caught me and placed me under arrest" (Byes Decl. ¶ 9).

## CONCLUSION

For the reasons stated above, defendant Byes' motion to suppress fruits of the January 2000 arrest and search is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 10, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5